The Appellant. In this case, we appeal from the lower court's refusal to refer to arbitration the claims which were advanced by the plaintiff, D.W. Industries, in the complaint filed below. One count of the complaint was dismissed, apparently in support of our position, but the remaining counts will go forward to trial unless the lower court is reversed. This court's review of the matter is plenary, and we submit that a fair reading and application of the decisional law of this district, which is fully in line with that of other districts, calls clearly for reversal of the trial court's ruling. There is a one-page order which appears in the record at page 198 by which the lower court disposed of our motion, and it doesn't reveal a lot about the lower court's reasoning. Let me for a moment describe the transaction between these parties which gave rise to the agreement in which the arbitration clause appears. The transaction is summarized in the complaint. The principal transaction documents appear in the record. The relationship between these parties began in 1997 in an asset purchase and sale agreement. The subject matter of the transaction was a system called the Sani-Tip system, which is a dental syringe product that applies either air or water out of a single handpiece with a replaceable tip for sanitation purposes. It was a family-originated business. Dr. Wasserman, his father-in-law, Mr. Davis, had developed this product and had been exploited it and sold it commercially with some success. Let me fast forward ahead. The problem is that the license agreement doesn't contain an arbitration term, right? Well, and that is not a problem at all because of the transaction between these parties. As it was structured, the asset purchase and sale agreement called for the entirety of the DW of business, including the license agreement to be transferred to Dentsupply. In rather typical form, Dentsupply acquired all the assets surrounding this enterprise, including its physical assets, its inventory, its equipment, its contracts, its patent license, its trademarks, the company name, the company goodwill. And not surprisingly, there were employment agreements and a consulting agreement with the principals of DW Industries as well. For that business in its entirety, Dentsupply paid at the front end $17 million, and there was an accompanying additional earn-outs provision, which provided that going forward with this business that is the Sani-Tip system, if the sales of Sani-Tip exceeded a level, and the agreement said of about $9 million, in years four and five after the transaction, then the seller would be eligible to receive some additional payment on a formula. Now, they have the right under the agreement to an accounting. Is that right? Absolutely. They receive both royalty reports and payments on a periodic basis. Why isn't their lawsuit asking for a specific performance of the accounting term exempt from the arbitration? Because at its core, it seeks enforcement of obligations of payment. It must examine necessarily the sales that had been accomplished by Dentsupply of the product in order to account for whether any additional payment is due to these parties. And although this complaint was carefully drawn, admittedly, to try to walk around the arbitration paragraph, I think the holdings of this court and other circuit courts, which have applied the Federal Arbitration Act, clearly recognize that arbitration has a broad capacity to deal with claims, and the style of the claim, the theory of the recovery, does not control the question of arbitrability. What controls begins with the inquiry of what sort of arbitration paragraph do we have. If it is a broad arbitration paragraph, as this undoubtedly is, then it sweeps before it all the disputes that may arise out of, relate to anything concerning the party's relationship. But it's all subject to a right to seek specific performance. It's all qualified by that. And we pointed this out to the lower court as well. The specific performance paragraph, which appears in Count 5, the one count that got dismissed, was styled as a specific performance of the asset purchase-sale agreement to compel Dentsupply to pay the additional sum due under the asset purchase-and-sale agreement, saying we're entitled to an additional earn-out. So it could also apply, couldn't it apply also to the accounting count? Let me direct you to the Simula case, which I think is probably the central authority on which this Court could review and decide the matter, because there the plaintiff was advancing a series of contentions, statutory claims including in a trust claim, Lanham Act trademark violations, violation of the Arizona Trade Secrets Act, tortious interference. There were tort claims as well. And the Court said all of these matters go forward into the arbitration and are not superseded or kept apart. And along the way, the Court dealt with, this Court dealt with the question. It recognized that some of the remedy embedded in the plaintiff's complaint in the Simula case sought equitable relief, at least the antitrust portions of it did. But that, too, went off to arbitration. And I think that reasoning, along with the reasoning of most of the other courts which have dealt with issues of this sort, clearly indicates that the plaintiff cannot control by choosing through a pleading format or a styling of his causes of action to avoid the impact of the arbitration agreement. I'd like to point the Court to the structure of the agreement, the detailed asset purchase and sale agreement, and in particular a document which was titled an addendum, an addendum to the asset purchase and sale agreement. It appears in the record at page 175. And that, more than anything else, is the document that ties the patent license agreement into the asset purchase and sale agreement. Sotomayor, are you thinking of more than paragraph 5, or is it strictly on page ER-176, paragraph 5? Is that what you're referring to specifically, or is there more that you want us to pay attention to in the addendum? I'm looking at ER-175, paragraph 1 in particular, Your Honor. Okay. What paragraph 1? The preamble paragraph is the third whereas clause, and paragraph number 1 of the addendum agreement, which I think clearly recites the party's intention to blend, that is, the party's recognition that the conveyance of the patent rights, the rights to exploit the patent rights, is an essential element that will not take place until the asset purchase and sale agreement has been consummated. And the DW, which is the licensee, transfers all of its rights under the patent license. And in paragraph 1, the patent holders, the owners, the licensors under the patent license agreement consent to that transfer, and they acknowledge that this addendum is attached to the asset purchase and sale agreement. So this is, in your view, what makes the license ancillary to the purchase agreement? Well, that's an interesting technical analysis of the use of the term ancillary agreement or other agreements under the contract. I think our position does not depend upon the parsing of that particular term because of the breadth of the holdings of this Court in its determination that a broad arbitration paragraph, which this undoubtedly is, sweeps before it any claim relating to arising out of the party's relationship. And let me, as I see my time winding down, remind the Court that the language of this arbitration paragraph picks up any dispute or claim relating to the agreement, which definitionally is a broad arbitration paragraph, or any document executed in connection with this agreement, which clearly is the addendum to the patent license agreement bringing in the relationships under the patent license agreement, or transactions contemplated by this agreement. And let me finish on that point. Throughout the plaintiff's complaint, particularly in Count 3, there is a claim for breach of the covenant of good faith and fair dealing. There is no way to isolate or separate whatever obligations may be implicit on the patent license agreement in a forward-looking way to sell this product and promote it without considering Densply's rights under the asset purchase agreement, having bought the entire cluster of the sanity tip business, to then make decisions about the way in which it will promote and sell this product nationally and internationally. That's the core of the dispute between the parties, and that's fully embraced within what must go off to arbitration in accordance with the agreement. Thank you, Mr. Lehman. Good morning. May it please the Court, Martin Washington for DW Industries, the plaintiff and appellee, and the individual plaintiffs and appellants, appellees, excuse me. May it please the Court, the arbitration of the license agreement is never specifically set forth in the purchase agreement. The arbitration agreement was in existence for six years before the purchase agreement was ever entered into. And the counsel, that's why I was actually asking about ER 176 and paragraph 5 of the addendum to the asset purchase and sale agreement, because paragraph 5 modifies and amends the existing licensing agreement. And it does so in order to clarify and effectuate the transfer of rights described here.  It seemed to me, although phrased awkwardly, that the whole point of paragraph 5 was to say we know we've had one of these in existence for a while, but we are now consciously amending it to make it a part of the asset purchase and sale agreement. I'll leave out ancillary. It is now related to the purchase and sale of assets. And so to me that evinces the party's intention to bring the license agreement into the fold, if you will, of the asset sale. Your Honor, let me explain why that's not correct, both on a reading of the addendum and on a reading of both the license agreement and the asset purchase agreement. Okay. Could you talk closer to the mic, please? I'm sorry. The addendum is an addendum to the asset purchase and sale agreement. It is not the amendment to the patent license agreement. And, in fact, the amendment to the patent license agreement, which is also in the record, I'll point it out to the Court, specifically says that all they're doing is amending it to add additional products. And it's only signed by the Davises and DW because they are the parties to the license agreement. And it's amended to add additional products. And it specifically says all other terms of the existing agreement remain in full force and effect. Okay. I want to clarify one thing. The copy that we have in the record does not show, you're correct, does not show a signature from Densply. Is that ñ did it never sign this addendum? Oh, no. That was signed by Densply. This is a ñ that's on page 178. What I'm pointing out, this is an addendum to the purchase agreement. It's not an addendum to the preexisting license agreement. I understand that. But it also says the existing license agreement is hereby modified and amended. Regardless of the title on the front page. That's why I asked the question. And I may be barking up the wrong tree here, but that ñ If I could just ñ ñ doubted me. If I could explain, there is ñ in order to effectuate this addendum, there is a separate amendment to the patent license agreement, which is in the file. I'll call it to the Court's attention in a moment. Okay. And that addendum ñ or that amendment, excuse me. And like any amendment, it relates back to the date the agreement was entered into. It adds some additional product and specifically says that every other term remains the same. The patent license agreement recites, it's at the excerpts of record at 129, that it's governed by Nevada law. It contemplates enforcements in the Nevada courts. It has an important provision that allows the licensor to enter into and cooperate in litigation initiated by the licensee against third-party infringers, and under certain circumstances allows the licensor to initiate litigation against third-party infringers. And in order to effectuate that right, litigation is necessary. Arbitration is inadequate. Arbitration is inadequate in this case. This case involves dense plies entering into a settlement of an infringement case with an admitted infringer. The connection ñ But, counsel, in part ñ I'm sorry to interrupt, but it appears to me that taking one step back, at least part of what this complaint seeks is more money under the license agreement. Is there a provision in the purchase agreement that say if X, then we get more money? That's what the defendant argues, but that doesn't make it correct. The complaint only seeks additional royalty payments under the license agreement. The specific performance provision with respect to the purchase agreement that was permitted under the arbitration clause was put into the complaint, and the complaint says so just to effectuate everything in one piece of litigation because it is conceivable ñ we don't know right now ñ it is conceivable that there was a breach of the purchase agreement only depending upon the ñ If it's conceivable that there's a breach of the purchase agreement and that, therefore, you are entitled to more money under the purchase agreement, then why isn't that an arbitrable claim, saying we think we might get more money under the purchase agreement? That's a potential claim. It's not a claim being asserted. And although defendants argue that potential claim is the standard, there's not a single case that says that. So your claim is you're entitled to more royalties under the agreement? We're entitled to more royalties under the agreement. Why isn't that ñ why isn't that arbitrable? I mean, why is it ñ let me put it a different way. Why isn't arbitration adequate for this? Because ñ It's a pure commercial issue. Well, we're seeking both royalties under the agreement, which were inadequately accounted for, and royalties that should have been accounted for in connection with the settlement with DCI. Well, why isn't ñ I guess I'm still not clear. Why isn't arbitration an adequate way to redress that? It may have been, if that's what the parties agreed to. What I'm suggesting is when the parties entered into the license agreement six years prior to the purchase agreement, they specifically negotiated for the right to sue in a court because frequently third-party discovery was going to be necessary to prove their damages. Third-party discovery that may not be available at the discretion of an arbitrator. So these were substantial rights that they had. Those rights were continued in an amendment that said the prior existing terms remain in full force and effect, and this Court should not assume that those rights are being given up just because of the so-called broad arbitration clause, which sweeps everything into it. Counsel, the broad arbitration clause also calls for discovery in accordance with the Federal Rules of Civil Procedure. Why isn't that? The arbitration clause, again, would require the arbitrator, the arbitrator's discretion to decide the breadth of discovery. I'm not aware of the fact that the purchase and sale agreement gives a right to discovery. Well, the parties agreed to it, so at a minimum, the parties can't go in and argue to the arbitrator that they never signed up for discovery because they did. They signed up for discovery in connection with the license agreement, not the purchase agreement. The license agreement specifically had a right to sue in court. And let me just state this. Time and time again we have heard that there's a broad arbitration clause and, therefore, it sweeps everything in. All that does is create a presumption. Every single Supreme Court case cited stands for the proposition that arbitration is a matter of agreement. It cannot be imposed. The Court can't change the terms of the agreement. And all that happens if there's a broad clause used, which this is, although there are broader clauses, because if you read the cases, you see cases in which the parties agree that all disputes between the parties shall be arbitrated, or all disputes pursuant to prior agreements shall be arbitrated. None of that's in this case. And the Court has said that all that does is create a presumption of fact and law, and that presumption is overcome. It's overcome by the language of the patent license agreement. It's overcome by the language of the asset purchase agreement. And more importantly, it's overcome by the undisputed course of dealing in the connection with the agreement, the asset purchase agreement, in which Densply specifically requested that the amendment of the license agreement should include an arbitration right in the license agreement, and the watchman said nothing doing. They wanted to preserve the right to sue in court if there was a breach of the license agreement, and that's why a court action was initiated and why there was no arbitration pursuit. It was important to the watchman to be able to fully pursue their rights to third-party discovery, which was not guaranteed under the arbitration clause, and to fully litigate the claims as they bargained for it in the license agreement. There is not a single case cited by the defendant that has such disparate contracts. I mean, if I – I think I mentioned earlier that the asset purchase agreement provides, and again, it's clear that ancillary agreements under the asset and purchase agreement are these other agreements that were entered into for confidentiality, for continuing consulting arrangements, and for employment. And in each of those three contracts that were entered into contemporaneously with the asset purchase agreement, the parties specifically incorporated the remedies of the asset purchase agreement. What about the language where the transactions contemplated by this agreement? Transactions contemplated by this agreement means transactions that were entered into in connection with the agreement. Now, it might include – I would suggest it might include the assignment. Let's say the assignment turned out not to have been performed. They have a right to enforce the assignment. But that doesn't create an ovation as to the contract which is assigned. All that does is assign the rights to the contract. The asset purchase agreement specifically says that Densply will continue to honor existing contracts, and we call that to the Court's attention. This was an existing contract. It was amended, and when it was amended, there was no insertion of any term requiring arbitration, unlike every other ancillary contract that was entered into in connection with the asset purchase agreement.  Thank you, Your Honor. Mr. Lehman, I'll give you 30 seconds in rebuttal, if you want. Two points, Your Honor. First, if you look at count one, I disagree with my colleague. Claims under the asset purchase agreement are still embedded in the remaining counts of this complaint. That's evident if you only look to the first count of the complaint, paragraph 19 demands damages both for unpaid patent license fees and for additional earn out under the asset purchase agreement. The same applies, I think, to later counts of the complaint. So these claims are fully engaged in the complaint that stands before you. The last point is the argument about the negotiating history between the parties is interesting, but it really doesn't change the effect and the language of the agreement which the parties did sign. Counsel argues, has argued that negotiating history as though it inserted something into the asset purchase agreement which said we have a broad arbitration agreement except the arbitration agreement will not apply to the patent license agreement. That's the thrust of the affidavit and the argument that he's made. Of course, that language appears nowhere because it was never inserted. And he cannot, through oral testimony, attempt to defeat the express language of the agreement which is before you. Thank you very much. Thank you to both gentlemen. The case just argued is submitted. The last case on the calendar 0510-209, United States v. Bates, is submitted on the briefs at this time. Thank you. We'll stand in recess.
judges: Hall, Silverman, Graber